IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THORRIS J. WILLIAMS,<br>ID #447886<br>Petitioner,<br>vs.<br><br>NATHANIEL QUARTERMAN, Director,<br>Texas Department of Criminal<br>Justice, Correctional Institutions Division,<br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 3:07-CV-0703-L (BH)<br><br>Referred to U.S. Magistrate Judge |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court, this case has been referred to the United States Magistrate Judge for findings, conclusions, and recommendation.

### I. BACKGROUND

**A. Nature of the Case**

Petitioner, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §§ 2254. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

**B. Procedural History**

On March 24, 1987, petitioner was convicted and sentenced to sixty years in prison for aggravated robbery. This sentence was later reduced to forty years. (State Habeas Transcript at 1-2). On March 27, 2001, petitioner was released on parole. (S.H.Tr.:36). On May 6, 2005, petitioner's parole was revoked based on a new conviction for assault. (S.H.Tr.:14).

On June 7, 2005, petitioner submitted a time credit dispute (TCD) alleging that he should receive credit for the three years he was on parole and that his good time prior to his release on parole should be restored (S.H.Tr.:12). On November 30, 2005, petitioner filed a second TCD

1

reurging the claims in his first TCD. (S.H.Tr.:11). His first TCD was denied on March 8, 2006, on grounds that there was no error in the time credit calculations. (S.H.Tr.:16). The second TCD was denied on May 9, 2006, for the same reason. (S.H.Tr.:17). Petitioner filed a state petition for writ of habeas corpus on August 16, 2006, contending that his sentence had been lengthened in violation of the Separation of Powers doctrine, the Ex Post Facto provision of the Constitution, and his due process rights because he was not being given street time credit and his previous good time credits had been forfeited. This application was denied by the Texas Court of Criminal Appeals on November 8, 2006, without written order on the findings of the trial court without a hearing. (S.H.Tr.:cover).

Petitioner asserted these same claims in his federal petition received April 6, 2007. (Pet. at 9); *see also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system). Respondent filed a response on August 30, 2007, alleging that petitioner's claims are barred by the statute of limitations and without merit. Petitioner filed a reply brief on September 26, 2007.

## II. STATUTE OF LIMITATIONS

Respondent first contends that petitioner's federal petition was not timely filed under applicable federal law.

### A. **Antiterrorism and Effective Death Penalty Act of 1996**

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of the Act substantially changed the way federal courts handle habeas corpus actions. One of the major changes is a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). The one-year period is calculated from the latest of either (A) the date on which the judgment of conviction became final; (B) the date on which an impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the Supreme Court initially recognizes a new constitutional right and makes the right retroactively applicable to cases on collateral review; or (D) the date on which the facts supporting the claim became known or could have become known through the exercise of due diligence. *See id.* § 2244(d)(1)(A)-(D).

Petitioner has alleged no state-created impediment under subparagraph (B) that prevented him from filing his federal petition. Nor does he base his petition on any new constitutional right under subparagraph (C). Because the instant challenge is not directed toward his aggravated robbery conviction, the finality of his judgment of conviction under subparagraph (A) likewise provides no proper starting point for determining the timeliness of this action. For purposes of this action, the Court will calculate the one-year statute of limitations under subparagraph (D) – the date on which petitioner knew or should have known with the exercise of due diligence the facts supporting his claim.

Here, the latest date on which petitioner knew or should have known with the exercise of due diligence the facts supporting his claim was May 6, 2005, the date his parole was revoked. Petitioner's April 6, 2007 petition was filed more than one year later. It is therefore untimely unless the statute of limitations was tolled.

**B. Tolling**

Respondent contends that petitioner is not entitled to any tolling because he filed his state application on August 16, 2006, more than one year after May 6, 2005, and because there is no tolling for the time during which his two TCDs were pending.

Section 2244 mandates that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending *shall not be counted toward any period of limitation under this subsection*." 28 U.S.C. § 2244(d)(2) (emphasis added). The Fifth Circuit has recognized that the pendency of a prison grievance also tolls the one-year federal limitations so long as it is filed within the one-year period. *See Kimbrell v. Cockrell*, 311 F.3d 361, 364 (5th Cir. 2002); *see also Foley v. Cockrell*, 222 F. Supp. 2d 826, 828-29 (N.D. Tex. 2002) (allowing for equitable tolling during pendency of appeal process for challenges to disciplinary actions). Before an inmate can file a state application for writ of habeas corpus which raises a time-served credit error, he must exhaust his administrative remedies by filing a TCD. *See* TEX. GOV'T CODE ANN. § 501.0081 (b) (Vernon 2004). Based on *Kimbrell,* the statute of limitations is tolled during the pendency of the TCD resolution process. *Broadnax v. Dretke*, No. 4:03-CV-524-A, 2003 WL 22244681, *3 (N.D. Tex. Sept. 17, 2003)(*citing Kimbrell* and *Foley*); *Cooper v. Quarterman,* No. 4:06-CV-527-A, 2007 WL 963170, *3 (N.D. Tex. Mar. 28, 2007). Because it was timely filed on June 7, 2005, approximately one month after his parole was revoked, Petitioner's TCD tolled the one-year federal time limit while he exhausted his administrative remedies.

Respondent next contends that even if petitioner is entitled to tolling during the pendency of his TCD, he is entitled to no more than six months of tolling because an inmate may not file a

state application for a writ of habeas corpus raising time-served credit error until he receives a written decision on his TCD, or, if the inmate has not received a written decision, the 180th day after the date he filed his TCD. *See* TEX. GOV'T CODE ANN. § 501.0081 (Vernon 2004). He claims that because petitioner did not receive a written decision on his June 7, 2005 TCD within 180 days later, the tolling of the one-year time limit ended on that 180th day, December 4, 2005. Courts have previously rejected this argument, however. *See Ponce v. Quarterman*, No. EP-07-CA-89-KC, 2008 WL 650321, *4 n.3 (W.D. Tex. Feb. 27, 2008) (petitioner is entitled to tolling for the entire pendency of the grievance process, not just 180 days); *Cooper,* 2007 WL 963170, *3 (tolling for entire pendency of administrative proceedings - 272 days). This Court likewise finds that the federal time limit was tolled from the date petitioner filed his first TCD, on June 7, 2005, until March 8, 2006, the date he received a written response to that dispute.

From May 6, 2005, the date that petitioner's parole was revoked, until June 7, 2005, when he filed his first TCD, thirty-two days had elapsed. From March 8, 2006, when his first TCD was denied, until August 16, 2006, when petitioner filed his state writ, another 161 days elapsed. An additional 149 days elapsed from November 8, 2006, when the state writ was denied, until April 6, 2007, the date petitioner filed his federal petition. Since only 342 total days had elapsed, petitioner filed his federal petition within the one-year time period.

### III. AEDPA STANDARDS

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

5

> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writ constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established

federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Petitioner's various claims are reviewed under these AEDPA standards.

## IV. STREET TIME

In his first and second grounds for relief, petitioner asserts that denial of street time for the three years he spent on parole violates the Ex Post Facto clause of the federal constitution and his due process rights and forces him to service his sentence in installments. In particular, he contends that the policy of not awarding street time because of the type of crime for which he was convicted was enacted into law in 2001 and therefore was not in effect when petitioner was convicted of aggravated robbery in 1987.

Federal habeas relief cannot be had "absent the allegation by a [petitioner] that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). "Under federal law, a prisoner does not receive credit towards his calendar time for time spent on parole if the prisoner violates the conditions of his release." *Thompson v. Cockrell*, 263 F.3d 423, 426 (5th Cir. 2001).

Under Texas law in effect when petitioner was released on parole in March of 2001, "an inmate serving the remainder of his sentence after the revocation of his conditional release did not

7

receive credit for the time from the date of the person's release to the date of revocation." *See Clark v. Cockrell*, No. 2:01-CV-0377, 2003 WL 21730321, at *3 (N.D. Tex. Apr. 1, 2003) (report and recommendation adopted by District Court) (citing Tex. Gov't Code Ann. § 508.283(b) (previously Tex. Code Crim. Proc. Ann. art. 42.18 § 14(a))). "The statutory language remained substantively unchanged from 1965 through September 2001". *Clark*, 2003 WL 21730321, at *3 n.3, *accord Ex parte Spann*, 132 S.W.3d 390, 393 (Tex. Crim. App. 2004) (noting that "[p]rior to 2001, section 508.283 prescribed that *any* parole violator forfeited the benefit of street-time credit"). Amendments effective September 2001 made "substantive changes to the statute" so as "to lessen the sentence of non-violent parole violators (versus violent parole violators) whose time spent out on parole exceeded their remaining sentence," however. *Ex parte Spann*, 132 S.W.3d at 393-94.[1] Because petitioner was convicted of a violent offense, aggravated robbery, the 2001 amendments do not apply to him.[2] Under either version of the statute, he is not eligible for credit to his sentence for time spent on parole.[3]

Neither Texas nor federal law regarding sentence credit for time spent on parole "raise constitutional concerns." *Clark*, 2003 WL 21730321, at *3. Petitioner has no "liberty interest

---

[1] By amendments effective September 2003, a subsection (d) of § 508.283 which was added by the 2001 amendments was re-lettered to subsection (e). Because petitioner's parole was revoked in May of 2005, the 2003 version applies to him.

[2] Petitioner also argues that the new version of the statute does not preclude him from receiving credit for time he spent on parole because he is eligible for release to mandatory supervision under the law applicable to him. Section 508.283 refers to persons "described by Section 508.149(a)." Section 508.149(a) describes persons who are or have been previously convicted of certain enumerated violent offenses, including aggravated robbery. Based on this offense, he is not eligible for credit for time spent on parole regardless of his eligibility for mandatory supervision release.

[3] Petitioner contends that his street time would not be revoked under the new version because no deadly weapon finding was made. Contrary to petitioner's assertion, the judgment from his aggravated robbery conviction does contain a deadly weapon finding. (Resp. Ex. A at 5).

8

grounded in either a state law or the federal Due Process Clause itself that would require respondent to credit petitioner with the street time he spent on parole", and has thus "failed to state a federal constitutional violation in this ground so as to entitle him to federal habeas relief." *Id.*

Nor can petitioner establish an ex post facto violation from § 508.283 because the change in that statute has not disadvantaged him in any form. *See Lynce v. Mathis*, 519 U.S. 433, 441(1997) ("To fall within the ex post facto prohibition, a law must be retrospective – that is, 'it must apply to events occurring before its enactment' – and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime."); *Hallmark v. Johnson*, 118 F.3d 1073, 1077-78 (5th Cir. 1997) (noting that, to constitute a violation of the Ex Post Facto Clause, a change in law "must be both retroactive and to a prisoner's detriment"); *Jackson v. Johnson*, No. 3:01-CV-1553-D, 2001 WL 1478789, at *3 (N.D. Tex. Nov. 16, 2001) (adopting recommendation which notes that there is no ex post facto violation for denying credit for street time, because "Texas law has provided, at least since 1988, that a person is not entitled to credit for 'street time' or 'flat time' following revocation of his parole or supervised release").

Even if the new parole guidelines did negatively affect petitioner, the retroactive application of new parole guidelines or a change in the manner in which parole authorities exercise their discretion does not violate the Ex Post Facto Clause. *See Portley v. Grossman*, 444 U.S. 1311, 1312-13 (1980) (relying upon *Dobbert v. Florida*, 432 U.S. 282, 293 (1977)); *Simpson v. Ortiz*, 995 F.2d 606, 610 (5th Cir. 1993) (recognizing that parole guidelines are not laws that can qualify as ex post facto); *Sheary v. United States Parole Comm'n*, 822 F.2d 556, 558 (5th Cir. 1987) (same). Petitioner specifically alleges that the State added street time to his sentence and therefore

9

lengthened his sentence by three years. He has shown no change in law that resulted in his conviction for an act that would otherwise have been legal in the absence of the change, that provides for a greater punishment, or that deprived him of any available defense according to law at the time of his offenses. Additionally, petitioner was on notice that he would not receive credit for street time if his parole was revoked. On the parole certificate petitioner signed in March of 2001, it clearly states in two separate places that, should his parole be revoked, he would forfeit all time spent on parole, and that the time would not be credited to his sentence. (Respondent Ex. A at 1-2).

Petitioner's contention that he is being required to serve his sentence in installments likewise fails. Although the Fifth Circuit has recognized the "common law rule that a prisoner is entitled to credit for time served when he is incarcerated discontinuously through no fault of his own", *see Free v. Miles*, 333 F.3d 550, 554 (5th Cir. 2003), any interruption in petitioner's sentence was a direct consequence of the violation of the terms of his parole. The parole revocation is directly attributable to petitioner, and the rule regarding serving sentences in installments is therefore inapplicable.

For all of these reasons, petitioner is entitled to no federal habeas relief on his claim for sentence credit for time spent on parole. In addition, "[p]etitioner has asserted no claim sufficient to find Texas Gov. Code § 508.283(c) unconstitutional." *Gordon v. Quarterman*, No. 3:05-CV-0115-H, 2006 WL 3420138, at *3 (N.D. Tex. Nov. 27, 2006) (findings and recommendation accepted by District Court). When the state court addressed these claims on their merits, it determined that petitioner had failed to prove either his ex post facto or his due process claims. (S.H.Tr.:37, cover). This decision is not contrary to federal law, and these claims should be denied.

## V. GOOD TIME

In his first, second, and third grounds for relief, petitioner asserts that his due process rights have been violated because his good time credits have been forfeited and the forfeiture is a violation of the Ex Post Facto clause of the federal constitution. He also claims that it is a violation of the separation of powers doctrine for the TDCJ to forfeit his previous good time credits because this discretionary act by the parole board has the effect of lengthening his sentence, an act that may only be accomplished through legislation or through the interpretation of legislation by the judiciary.

In order to establish a due process violation, petitioner must show that he has been deprived of a protected right to which he has a "legitimate claim of entitlement." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). The United States "Constitution does not guarantee good time credit for satisfactory behavior while in prison." *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)); *Hamill v. Wright*, 870 F.2d 1032, 1036 (5th Cir. 1989) (same). Any "legitimate claim of entitlement" must therefore come from the state. Under Texas law, "good-time credit is not a vested right, but rather is a privilege which may be forfeited . . . by violating the guidelines of a conditional release program." *Ex parte Henderson*, 645 S.W.2d 469, 472 (Tex. Crim. App. 1983) (en banc); *accord* Tex. Gov't Code Ann. §§ 498.003, 498.004 (Vernon 2004).[4] When petitioner was convicted and sentenced in 1988, Texas law provided:

Good conduct time applies only to eligibility for parole or mandatory supervision . . . and

---

[4] Section 498.003 provides: "Good conduct time applies only to eligibility for parole or mandatory supervision . . . and does not otherwise affect an inmate's term. Good conduct time is a privilege and not a right." Section 498.004 provides that after revocation of parole "the inmate forfeits all good conduct time previously accrued. On return to the institutional division the inmate may accrue new good conduct time for subsequent time served in the division. The department may not restore good conduct time forfeited on a revocation."

11

> shall not otherwise affect the inmate's term. Good conduct time is a privilege and not a right. . . . Upon revocation of parole or mandatory supervision, the inmate loses all good conduct time previously accrued, but upon return to the department may accrue new good conduct time for subsequent time served in the department.

*See Leos v. Cockrell*, No. 3:00-CV-2343-P, 2002 WL 318338, at * 2 (N.D. Tex. Feb. 26, 2002) (findings and recommendation accepted by District Court) (quoting Tex. Civ. Stat. art. 6181-1 § 4 (West Supp. 1979)). Petitioner cannot establish that he had a "legitimate claim of entitlement" to his previously earned good time credits after the revocation of his parole.

With regard to petitioner's ex post facto claim, he can establish no violation because he has never been entitled to good time credits earned prior to his release. Even if a change in the law had disadvantaged him, as noted earlier, the retroactive application of new parole guidelines or a change in the manner in which parole authorities exercise their discretion does not violate the Ex Post Facto Clause because the alleged change is not both retroactive and to petitioner's detriment. *See Hallmark*, 118 F.3d at 1077-78; *see also*, *Lynce*, 519 U.S. at 441. The courts "must decide if the change disadvantaged the prisoners affected by it to a degree of ex post facto significance." *Hallmark*, 118 F.3d at 1078. In other words, the courts "must determine whether [the change] produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." *California Dep't of Corrections v. Morales*, 514 U.S. 499, 509 (1995). The critical inquiry is whether the new law "punish[es] as a crime an act previously committed, which was innocent when done; . . . make[s] more burdensome the punishment for a crime, after its commission; [or] deprive[s] one charged with crime of any defense available according to law at the time when the act was committed." *Collins v. Youngblood*, 497 U.S. 37, 52 (1990). Petitioner's term of punishment has not changed, so there has been no ex post facto violation.

Finally, regarding petitioner's separation of powers claim, the Court of Criminal Appeals has

held that the fact that the parole board's discretionary decisions are not subject to judicial review does not violate the separation of powers doctrine. *See Ex parte Geiken*, 28 S.W.3d 553, 557 (Tex. Crim. App. 2000) (holding that the doctrine is not violated because the parole board's decision whether or not to grant parole is not judicially reviewable). Similarly, statutes enacted by the legislature that provide for some discretion for when an inmate can and cannot receive good time credits does not violate this doctrine. More importantly, the Fifth Circuit has held that a claim involving only the state branches of government does not establish a federal constitutional violation based on the Separation of Powers doctrine. *See Baca v. Owens*, No. 07-51148, 2008 WL 3380769, at *1 (5th Cir. Aug. 7, 2008) (per curiam). Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

In denying these claims, the state court determined that petitioner had failed to establish that his due process rights were violated, any ex post facto violation, or any violation of the separation of powers doctrine. (S.H.Tr.:37, cover). These decisions are not contrary to federal law. Petitioner's claims are without merit and should be denied.

## V. EVIDENTIARY HEARING

Upon review of the pleadings filed herein, an evidentiary hearing appears unnecessary.

## VI. RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

13

**SIGNED on this 19th day of March, 2009.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE